No. 2277

Second Circuit Appeal.

JOHN BURKS, FOR THE USE, ETC., v. GLENMORA SERVICE STATION

(June 23, 1925, Opinion and Decree.)

(*Syllabus by the Editor.*)

1. Louisiana Digest—Master and Servant—Par. 160 (a)—Estoppel—Par. 24, 26.

An automobile service station which advertizes to the public that it has a garage run in connection with it is not estopped from showing when sued by an injured employee for compensation under Workmen's Compensation Act No. 20 of 1914, that the garage is run independently by another person who employs and discharges his own help independently.

2. Louisiana Digest—Master and Servant—Par. 153, 154.

Where the evidence in a Workmen's Compensation case under Act No. 20 of 1914, shows that the injured employee was working for A who had leased his space from B he cannot recover compensation from B but can only recover from A.

(Section 1, Subsection 2, of Act 20 of 1914. Editor's note.)

3. Louisiana Digest—Appeal—Par. 245; Master and Servant—Par. 160 (I).

A demand for judgment in the alternative against B to which B had not answered at the time of the trial nor had there been sufficient lapse of time to demand a default against B, must remain undisposed of in the Court of Appeal until further proceedings have been taken in the lower court.

Appeal from Thirteenth Judicial District Court of Louisiana, Parish of Rapides, Hon. J. A. Williams, Judge.

This is a suit by a father suing for compensation under the Workmen's Compensation Act No. 20 of 1914, for the use of his minor son for the loss of an eye.

.There was an alternative demand. There was judgment for one defendant but the demand against the other defendant remained undisposed of. Plaintiff appealed.
. Judgment affirmed. .

B. T. Dawkins, of Alexandria, attorney for plaintiff and appellee.

Overton & Hunter, of Alexandria, attorneys for defendant, appellant.

REYNOLDS, J. This is a suit by John Burks for the use of his minor son Riley Burks to recover from defendant $9 per week for 400 weeks under the workmen's compensation law for the loss of an eye by Riley Burks, and for $80 medical expenses incurred in connection therewith.

By supplemental petition Bethal Hall was made a party defendant to the suit and in the alternative the same judgment was asked him as was prayed for against Glenmora Service Station in the event the court found that Bethal Hall and not Glenmora Service Station was in fact the employer of Riley Burks.

J. E. Patrick, D. B. Jennings, and S. A. Andries, as partners composing the Glenmora Service Station, filed an answer denying liability on the ground that at the time of the accident to Riley Burks he was not employed by them but by one Bethal Hall.

Bethal Hall made no defense.

On these issues the case went to trial and there was judgment rejecting plaintiff's demand as against Glenmora Service Station and suspending judgment on his alternative demand against Bethal Hall on the ground that the default taken against him was not ripe for confirmation. From this judgment plaintiff appealed.

## OPINION.

The questions to be decided in this case are, whether or not Riley Burks was an employee of Glenmora Service Station at the time of the accident to him, and, if not whether or not Bethal Hall was an independent contractor under Glenmora Service Station. ·

Plaintiff's counsel in an able brief, presents many plausible reasons why, as to the general public, Riley Burks should be held to have been an employee of Glenmora Service Station.

Among these are that Glenmora Service Station and Bethal Hall with his garage and repair room occupied the same building, a building 40 by 70 feet in size, with a filling station across the side where Riley Burks worked, the battery room and charging department in one corner of this garage and the accessory and parts room on the other side of the garage. The garage where Riley Burks worked being situated between filling station and the supply room. Across the entire building was a sign reading: "Glenmora Service Station". It was necessary for persons calling at the office to go through the garage. Every department, including the garage, was under the same roof and used the same doors. That the garage business was held out as a part of the business of Glenmora Service Station in an advertisement in the Glenmora Patroit reading:

"Prepare for Winter.
"Our advice to you, one and all, is to · bring that car in and let us overhaul it, before the cold and rainy weather sets in. You will probably need a new top or .new curtains or may be your motor needs a general overhauling. We are prepared to do all this and at a price that you will feel like paying. Our mechanics are the very best and are at your command."
"Oil and Gas.
"You will find our oil and gas department is on the job from 6 a. m. to 10 p. m. Drive up and toot your horn.
              "Glenmora Service Station
                     "J. R. Patrick, Mgr."
· "Day Phone 96. Night Phone 50-R." ·

That the accounts for parts sold and for work done were kept in one set of accounts

and bills for these made out on the bill heads of Glenmora Service Station were sent out. That money paid for repair work done was paid to and received by Glenmora Service Station and went into the safe and later into the bank account of Glenmora Service Station. That repair work done on the cars of members of the Glenmora Service Station was done without charge to them. That the money necessary for Bethal Hall to pay laborers working under him was turned over to him every Saturday night by Glenmora Service Station. That Patrick and Jennings, members of Glenmora Service Station, were in the habit of giving orders to Riley Burks.

These may be good reasons why, as to the general public, Glenmora Service Station should not be allowed to deny that Bethal Hall was one of its employees, but as to Riley Burks these reasons do not apply; for under the arrangements between Glenmora Service Station and Bethal Hall he was to operate the shop on its merits and receive the price of all work done and was to employ and discharge and pay his own help independently of the Glenmora Service Station.

Bethal Hall testified, page 60:

"Q. Now, was there any secret made of the fact that you were the proprietor of the repair business?
"A. Not in the least, no, sir. Everybody in town knew it, and they knew it, too.
"Q. Did Riley know that he was being employed by you and not by the Glenmora Service Station?
"A. Yes, sir, he did.
"Q. State some facts to show that he knew that he was being employed by you?
"A. Because I hired him. I always turned him off and he knew I turned in labor and he had learned how to do the same thing and he was present when I went in there to check up and when Patrick gave me my money on Saturday night, Riley was generally always present.

"Q. In handing you the money, did Patrick give you just the exact amount of Riley's wages, or would he give you the amount that he had earned and had been collected?
"A. He would give me everything on the cash ticket and if I didn't have enough on there to pay my expenses, I could borrow on good accounts and still stand responsible for the amount I had borrowed.
"Q. He didn't hand you Riley's wages and you in turn hand it to Riley?
"A. No, sir.
"Q. He gave you what was coming to you out of the cash—(interrupted)
"A. Yes, sir, and I fixed the amount myself and gave it to him, myself."

Riley Burks testified, page 14:

"Q. You do know that Mr. Cathan had full charge of that repair shop?
"A. Yes, sir."

Page 15:

"Q. At any rate, you know that Hall finally bought Cathan out?
"A. I don't know whether he bought him out or not. He told me that he was going to take the shop and run it, and if I wanted to work there it would be all right, and if 1 didn't it would be all right.
"Q. He did take the shop?
"A. Yes, sir.
"Q. And Mr. Cathan left?
"A. Yes, sir."

*  *  *

"Q. Did you tell him that you wanted to go and work?
"A. Yes, sir.
"Q. And he was the one who employed you?
"A. Yes, sir.
"Q. Cathan first employed you and after Cathan left Hall employed you?
"A. Yes, sir."

Page 16:

"Q. When you were working under Hall, who gave you the money, the wages?
"A. He did.
"Q. Mr. Hall?
"A. Yes, sir.
"Q. Did Patrick or Andrew or Jennings ever pay you your wages?
"A. No, sir."

* * *

"Q. Didn't you tell Patrick and Jennings both on a number of occasions that you wouldn't take any orders or suggestions from them, that you were working for Hall, and that you wouldn't take any suggestions from them?

"A. I did, but they told me to do things and I worked right on.

"Q. You told them you say that you were working for Hall—why did you say that?

"A. Because he hired me."

J. E. Patrick testified, page 85:

"Q. Did Riley Burks know that he was getting his orders from Bethal Hall?

"A. He should have known it.

"Q. He was getting them?

"A. Yes, sir he told me several times that he wasn't working for me that he was working for Bethal Hall."

Page 90:

"Q. Did Burks have every reason to know that he was working for Hall and not for you all?

"A. Yes, sir. I heard Hall tell him that, and he has told me that he was working for Hall and not for me. When I would call his attention to certain jobs when he would be sitting around there doing nothing, he would say 'I am not working for you, but for Hall'. He told me that numbers of times.

D. B. Jennings testified, page 101:

"Q. Did Riley Burks know that he was working for Hall?

"A. I would think so. I have asked Riley to do little things and he told me time after time that he was not working for me."

Clifford Goree testified, page 117:

"Q. While working there did you have a conversation with Riley Burks relative to his employment by Mr. Bethal Hall?

"A. Riley was in there and we were all asking him about getting his eye hurt and it had been brought up that he was going to sue the Glenmora Service Station, and some of the boys asked him who he was working for, and he said that he was working for Bethal Hall, and that was who he was looking to to get his money."

From this evidence it appears clear to us that Riley Burks was working for Bethal Hall at the time he met with the accident in which he lost an eye.

As to the second question, the contention of plaintiff that Bethal Hall was not an independent contractor under Glenmora Service Station, we think the evidence makes it clear that the contract between Glenmora Service Station and Bethal Hall was one of lease by which Glenmora Service Station leased to Hall space in its building and furnished free of cost to him services of its bookkeeper and electric light and advertisement as an inducement to get Hall to operate a garage and repair shop in its building as feeder for the oil and gas and automobile parts business conducted by Glenmora Service Station; and under the evidence it is made plain to us that such a contract was entirely reasonable because the sale of oil and gas and automobile parts was highly profitable and the operation of a garage and repair shop in Glenmora was financially hazardous.

Defendant Bethal Hall did not file any answer to plaintiff's demand against him and though plaintiff had taken a default against him his default was not ripe for confirmation. Hence plaintiff's demand for judgment against Bethal Hall in the alternative must remain undisposed of until further proceedings are had on that demand in the District Court.

For these reasons, it is ordered, adjudged and decreed that the judgment of the lower court be affirmed.